NOT DESIGNATED FOR PUBLICATION

No. 120,368

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KAREN HOLMES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jewell District Court; KEVIN L. PHILLIPS, magistrate judge. Opinion filed September 27, 2019. Affirmed.

*Katie J. Schroeder*, of Schroeder Law Office, LLC, of Beloit, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GARDNER, J., and LAHEY, S.J.

PER CURIAM: Following a bench trial, Karen Holmes was found guilty of misdemeanor criminal trespass and assault. On appeal, she argues that her convictions were not supported by sufficient evidence. Because we find the evidence presented at trial supports Holmes' convictions, we affirm.

1

Charged with misdemeanor criminal trespass and assault, Holmes appeared before the district court for a bench trial on September 6, 2018.

The victim, Kenna Stout, and her finance, Glen Nance, lived together two houses south of Holmes. In between the two houses lived a woman named Laura.

On the evening of May 9, 2018, Nance was inside his garage with some friends while Stout and a friend were talking in Stout's driveway. Holmes was in her own front yard.

At some point, Stout and Holmes began yelling back and forth between the yards about Stout's son. Stout heard Holmes loudly mimicking Stout's four-year-old son, saying his name and things like, "I like to be loud and I do this and . . . I walk on people's sidewalks and I kick dirt." According to Stout, it was not the first time Holmes had been upset with Stout's son, as she had previously told him "to get the F off" her sidewalk and to walk in the street. This night, after hearing the mocking, Stout called over to Holmes asking her to quit talking about her son and to come to her with any problems.

Holmes walked through Laura's yard towards Stout and stopped within a few feet of Stout and Nance's driveway, according to witnesses. Holmes contended she stopped in Laura's driveway where she had permission to be.

According to the State's witnesses, as Holmes approached, she was acting strangely and screaming at Stout while holding a dandelion picker down by her side in a clenched fist. Stout testified that she was scared and fearful that Holmes would hurt her and that the dandelion picker hung down by Holmes' side "like she was ready at any point

2

in time. All she had to do was lift her hand." Holmes testified she had the garden tool because she had been digging weeds at the time the incident began.

Stout told Holmes multiple times to get off her property, but Holmes persistently refused to leave and continued to advance. Stout and Nance testified that they showed Holmes the "No Trespassing" sign, but Holmes did not budge. Holmes denied ever seeing any "No Trespassing" sign.

At some point, Holmes made a comment to Stout something like, "I really, really love you." Stout thought Holmes was again mimicking her son because Holmes spoke much like Stout and her son privately speak to each other. According to Nance, this was when "all hell broke loose." Because Stout became distraught, Nance had to stand in between the two women and hold Stout back. Nance and Stout continued to ask Holmes to leave, but she would just stare back. The whole altercation lasted 20 to 30 minutes.

Eventually, when law enforcement arrived, Holmes dropped the dandelion picker, flicked her cigarette into Stout's yard, and returned to her house. Two officers interviewed the residents and guests at Stout and Nance's property. They also found the garden tool on the ground beyond Nance's driveway. The officers walked over to Holmes' house and knocked on Holmes' door several times, but she did not answer.

The district court found Holmes guilty on both charges and sentenced her to 6 months in jail for criminal trespass and 30 days for assault but granted Holmes 12 months of probation.

Holmes timely appeals.

WAS THERE SUFFICIENT EVIDENCE TO SUPPORT

HOLMES' CONVICTIONS OF CRIMINAL TRESPASS AND ASSAULT?

On appeal, Holmes argues the State presented insufficient evidence to support the convictions of criminal trespass and assault. As to the trespass, Holmes maintains that the State did not present evidence that Holmes entered Stout's property other than Stout's testimony. On the assault charge, Holmes contends that little evidence supported a conclusion that she acted "knowingly" and no evidence supported that Stout had an apprehension of immediate bodily harm. She asks that we vacate her convictions.

A.      *Standard of Review*

"When sufficiency of the evidence is challenged in a criminal case, we view the evidence in the light most favorable to the prosecution and determine whether we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. . . . On the way to the outcome, we 'do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Ward*, 307 Kan. 245, 249, 408 P.3d 954 (2018).

B.      *Criminal Trespass*

The State charged Holmes with entering into or remaining upon land with knowledge that she was not authorized or privileged to do so, and the premises were posted in a manner reasonably likely to come to the attention of intruders. See K.S.A. 2018 Supp. 21-5808(a)(1)(B).

Holmes argues the State presented no evidence other than Stout's testimony that Holmes entered Stout's property. Our standard of review demands that we weigh the evidence in the light most favorable to the prosecution, which in this case means taking Stout's testimony to be true. In addition to Stout's testimony, Nance testified to where the

property line was located, and several witnesses testified that Holmes had crossed the line. Furthermore, the police found the dandelion picker in Nance and Stout's yard.

Nance and Stout told Holmes many times to leave the property. The State also presented evidence that the premises were marked by a "No Trespassing" sign that was reasonably visible and that Nance and Stout made Holmes aware of the sign.

Viewed in the light most favorable to the prosecution, a rational fact-finder could have found that Holmes was guilty of criminal trespass beyond a reasonable doubt.

C.    *Assault*

To convict Holmes of assault, the State must prove that Holmes knowingly placed Stout in reasonable apprehension of immediate bodily harm. See K.S.A. 2018 Supp. 21-5412(a). First, Holmes argues that little evidence supports showing that Holmes acted knowingly. A person acts knowingly

> "with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2018 Supp. 21-5202(i).

A fact-finder may infer that a defendant acted knowingly. "Intent, like any element of a crime, may be shown by circumstantial evidence, and a person is presumed to intend all the natural consequences of his acts." *State v. Childers*, 222 Kan. 32, 37, 563 P.2d 999 (1977).

Here, it is reasonable to infer based on the evidence that Holmes knew her conduct would cause Stout to be placed in reasonable apprehension of immediate bodily harm.

5

By Stout's account, after she asked Holmes to stop mocking her child, Holmes screamed at Stout and walked across Laura's yard towards Stout while continuously clenching the garden tool in her fist.

A reasonable person could infer from this evidence that Holmes was "aware that her conduct was reasonably certain to cause" Stout's apprehension of immediate bodily harm. See K.S.A. 2018 Supp. 21-5202(i); K.S.A. 2018 Supp. 21-5412(a). In other words, one could infer that Holmes knew that acting strangely, screaming, and marching over to Stout's home with a garden tool in hand was reasonably certain to cause apprehension of immediate bodily harm in Stout. Thus, we cannot conclude that it was unreasonable for the district court to find that Holmes acted knowingly based on the evidence presented at trial.

Holmes points to facts which she contends do not depict a person in reasonable apprehension of immediate bodily harm. She argues, for example, that Stout perpetuated the situation by yelling at Holmes, and she notes Stout never retreated from the scene and had to be held back from attacking Holmes at one point. Holmes' testimony was that she had the dandelion picker in her hand merely because she had been weeding her yard immediately prior to the incident. Other witnesses testified it was dark which could cast doubt on Holmes' explanation of holding the dandelion picker. Holmes contends there is "little evidence that [Stout] was in fear of bodily harm during the incident, only her testimony at trial indicated she was 'scared' during the incident." We view Holmes' argument as an invitation to reweigh the evidence and rely on those facts and inferences which support her view of the evidence. But appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Qualls*, 297 Kan. 61, Syl. ¶ 1, 298 P.3d 311 (2013).

Assault contains both a subjective apprehension by the victim, i.e., whether the victim had an apprehension of immediate bodily harm, as well as an objective

determination that the apprehension was reasonable. See *State v. Angle*, No. 116,152, 2017 WL 4216161, at *3 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 988 (2018). Stout testified that she was "fearful that [Holmes] was going to hurt us. She came over with a weapon in her hand. . . . We were in fear that she was going to come after us." Based on this evidence, a reasonable fact-finder could find that Stout had a subjective apprehension of immediate bodily harm.

The objective determination of the reasonableness of the apprehension of immediate bodily harm rests on the fact-finder as well. *State v. Bulk*, No. 114,462, 2016 WL 7494359, at *5 (Kan. App. 2016) (unpublished opinion). Holmes was acting oddly and belligerently, advancing upon Stout with a garden tool. See *State v. Brown*, No. 114,808, 2016 WL 7429424, at *3 (Kan. App. 2016) (unpublished opinion) (holding rational fact-finder could find victim was in reasonable apprehension of immediate bodily harm when defendant was within 4 to 5 feet with large knife and advancing quickly). Based on all the evidence, a reasonable fact-finder could find that Stout's apprehension of immediate bodily harm was reasonable.

We find Holmes' convictions of criminal trespass and assault are supported by sufficient evidence.

Affirmed.